# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 29 2017, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Derek R. Molter
Jenny R. Buchheit
Eric J. McKeown
Ice Miller LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Karl L. Mulvaney
Nana Quay-Smith
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

John K. Morris
Morris Law Office
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John C. Parkinson, *Appellant-Petitioner,* <br><br> v. <br><br> Michael L. Parkinson and William L. Parkinson, *Appellees-Respondents.* | March 29, 2017 <br><br> Court of Appeals Case No. 79A05-1607-TR-1653 <br><br> Appeal from the Tippecanoe Circuit Court <br><br> The Honorable Robert W. Thacker, Special Judge <br><br> Trial Court Cause No. 79C01-1408-TR-8 |

**Najam, Judge.**

## Statement of the Case

John Christopher Parkinson ("Chris") appeals the trial court's June 20, 2016, denial of his Indiana Trial Rule 60(B) motion for relief from judgment ("the June 2016 Order") in which Chris sought to have a prior judgment that dismissed his appeal with prejudice and assessed more than $17,000 in fees and costs against Chris ("the Dismissal Order") vacated. In the June 2016 Order, the court, in addition to denying the motion for relief from judgment: (1) denied Chris's request for a continuance, (2) denied Chris's request for a stay of proceedings, (3) set the pending request for proceedings supplemental for a hearing on the merits, (4) ordered Chris to show cause for his failure to appear at a prior-scheduled hearing on the request for proceedings supplemental, and (5) issued a writ of body attachment to secure Chris's presence at the next-scheduled hearing. Chris raises four issues for our review, which we consolidate and restate as the following three issues:

1.  Whether the trial court erred when it denied Chris's Indiana Trial Rule 60(B) motion for relief, which he had premised on the trial court's alleged failure to comply with the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901-4043 (2016) ("the Act"), in the Dismissal Order;

2.  Whether the trial court erred either when it denied the motion to stay Chris had filed along with his Rule 60(B) motion or when it issued a writ of body attachment to compel Chris's appearance before the court despite his military duties; and

3. Whether the trial judge's comments, demeanor, or conduct toward Chris requires the judge to recuse himself from further proceedings.

We hold that the basis for Chris's Rule 60(B) motion for relief from judgment was known to Chris at the time the court entered the Dismissal Order, including the award of fees and costs the court ordered with that judgment. Hence, to obtain appellate relief from the Dismissal Order, Chris was required to file a notice of appeal within thirty days of that judgment. Chris was not permitted, instead, to seek relief nearly one year later under Rule 60(B), and a trial court does not abuse its discretion when it denies an improper motion. Further, as the denial of the improper Rule 60(B) motion is the only basis upon which Chris invokes appellate review, we decline to reach the merits of Chris's additional arguments regarding the denial of the motion to stay and the issuance of the writ of body attachment. We also decline to review Chris's argument that the trial judge's comments require the judge to recuse himself from further proceedings; the trial judge has already assigned this matter to another trial court. Accordingly, we affirm the trial court's judgment on the merits of the June 2016 Order.

## Facts and Procedural History

Chris is a Lieutenant Colonel in the United States Marine Corps on active duty and stationed in Doral, Florida, at the U.S. Marine Corps Forces, South, base. On August 27, 2014, he filed a petition to remove his brother, Michael Parkinson ("Michael"), and his father, William Parkinson ("William"), as the

trustees of The Parkinson Family Trust ("the Trust"). At Chris's request, the trial court, with the Honorable Kurtis Fouts then presiding, entered a temporary restraining order and, later, a preliminary injunction that prohibited Michael and William from exercising control over the Trust during the pendency of the litigation. Later, Michael's and William's attorneys deposed Chris in Florida and, in doing so, incurred expenses in excess of $17,000.

[4] In late 2014, Michael and William moved for a change of judge, and the Honorable Robert W. Thacker began to preside over the matter. Judge Thacker set a trial date for February 24, 2015. On January 21, 2015, Chris moved to stay the trial date for at least ninety days pursuant to the Act ("the January 2015 Motion to Stay"). The court denied Chris's motion after finding that he "is able to participate sufficiently either by counsel or by electronic means to protect his interests in this matter." Appellant's App. Vol. II at 88. Nonetheless, the court rescheduled the bench trial for June 23.

[5] On June 17, Chris moved to dismiss his petition due to the hardship his claims had caused his family and also due to his service requirements. The court, however, did not rule on the petition until the start of the June 23 trial. The court made each of the following statements to Chris's attorney (Chris was not present):

- "you all may be geniuses of the law and know your rights and responsibilities, but that Motion [to Dismiss] didn't get granted."
- "It's been gamesmanship and games galore from where the poor old Special Judge sits thirty miles away from the Courthouse of the venue of the case."

- "I think [Chris] is in the wrong . . . ."
- "I don't believe [Chris] was ever serious about accomplishing what his Complaint alleges is the case or was the case."
- "[Chris has] interjected himself in affairs here in Indiana when he lives in Florida, and [he] has a real busy schedule and a real important job and [is a] real important guy, and . . . as far as I can tell the Trial Judge is just a piece of sand to him . . . ."

Tr. Vol. I at 7-8, 42, 49-52. The trial court also suggested that Michael and William were engaged in similar behavior. *E.g.*, *id.* at 44.

[6] The court then entered the Dismissal Order, in which it granted Chris's motion to dismiss with prejudice. In granting Chris's motion to dismiss, the court ordered him to pay to Michael and William the fees and costs associated with Chris's Florida deposition.[1] The court found $17,466 to be a reasonable amount for those fees and costs.

[7] Chris failed to pay the ordered amount. Accordingly, Michael and William initiated proceedings supplemental against Chris. After two continuances at the request of Michael and William—including a continuance filed one day before a scheduled hearing date in December, while Chris was in Indiana and ready and able to appear—the court held a hearing on the motion in proceedings supplemental on January 19. However, Chris did not appear due to a medical illness. The court rescheduled the hearing on the proceedings supplemental to

---

[1] In his brief on appeal, Chris asserts that the trial court ordered these costs *sua sponte*. That is not correct. At the June 23 hearing, Michael made clear to the court that he had requested relief for his fees and costs, and he and the court whittled it down to the fees and costs associated with the Florida deposition as a meritorious basis for relief.

June 20, 2016, but also scheduled a show-cause hearing for February. The court ordered Chris to appear at the show-cause hearing and "provide medical documentation . . . regarding his inability to appear at the [January] hearing." Appellant's App. Vol. II at 17.

[8]     Chris failed to appear in person at the February show-cause hearing, but his counsel appeared and moved to continue the hearing. Chris's attorney also filed with the court medical documentation from an Army physician in which the physician informed the court that she had diagnosed Chris with an upper respiratory infection in mid-January of 2016 and that Chris was "unable to travel due to his persistent respiratory symptoms." *Id.* at 140. The court stated that it would grant Chris's motion to continue, and the court consolidated the show-cause hearing with the June hearing in proceedings supplemental. In doing so, the court stated as follows:

> [Chris] is ORDERED to appear before this Court in person and show cause why he should not be held in contempt for his failure to appear as ordered on February 17, 2016, for why he has not responded to discovery as ordered by this Court, for why he has not provided adequate answers to interrogatories, and to answer as to why he has not to date paid any amount toward satisfaction of this Court's judgment. [Chris] shall also be prepared to answer as to his income and assets in proceeding[s] supplemental. . . .

*Id.* at 18.

[9]     On June 10, Chris filed a motion for relief from the Dismissal Order pursuant to Indiana Trial Rule 60(B). According to Chris, the Dismissal Order was entered

in violation of his federal rights under the Act. In particular, Chris asserted that he had "filed his [motion to dismiss] as a result [of] the Court's denial of [the January 2015 Motion to Stay] . . . and his inability to defend his rights . . . in light of the limitations placed upon him by his active duty service." *Id.* at 150. Thus, Chris continued, the Dismissal Order was in violation of federal law. Chris further requested a stay of the proceedings supplemental, also pursuant to the Act ("the June 2016 Motion to Stay"). Thereafter, Chris separately moved to continue the show-cause hearing under the Act.

[10] Chris attached to his motion to continue a letter from the United States Marine Corps Chief of Staff, which explained that Chris's presence on base in Florida was "indespensible [sic] to this command" and that leave to attend the court proceedings in Indiana would be in "conflict" with Chris's "current military duties." *Id.* at 171. An additional letter from a Staff Judge Advocate with the Marine Corps agreed with the Chief of Staff's assessment. *Id.* at 172.

[11] Nonetheless, on June 20, 2016, the court held the show-cause hearing and the hearing in proceedings supplemental. At that hearing, the court made each of the following statements:

- "I don't agree with [Chris] using his [military] status willy nilly. I think it's wrong. I think it's wrong legally. I think it's wrong personally. You can't start a lawsuit and act like you're going to be a private citizen in that capacity[] and then when there's things that have to be done for your benefit and to your detriment potentially and then claim some status that keeps you from participating. That's as non[-]due process, unfair, and unconstitutional as you can get. And I don't care if you're . . . a general in the Pentagon. So that's just not right, and that's what keeps going on

here. This person can attend by video conference, by telephone, in person. He came when he wanted to. Now he doesn't want to. He doesn't want to come and stand at oath and be asked simple questions about whether or not he can pay a judgment. So that's just wrong . . . ."

- "[T]hey can play all the games they want to play. It's a game as far as I'm concerned, and it's not fair . . . . It has to do with a bunch of people pulling their ties up around their neck[s] and acting like they're—kind of got some importance that goes back a thousand years and forward a thousand years."
- "[Chris is] not that important as far as I can tell through the function of the military operations in this day and age."
- "I'm just a small human being as there could be. Obviously [Chris] is a much greater, bigger, more important human being than I am. Both in my job and in my persona, clearly."
- "really what it boils down to is the legal reasons you're citing are—he's a big man. He's an important man. It's as if he's got executive privilege. That he's the President of the United States, and we know it can be done away with so I look at him as though he thinks he's the President of the United States, and he's claiming that I can't do anything to him because I'm just a State Court Judge in Indiana—out in rural Indiana. That I've got no power—that I'm stupid, and nobody's going to listen to me . . . . I got nothing when it comes to a grown man who is a citizen of the United States who happens to work for the Federal government who doesn't have to come to Court and just tells me so in no uncertain terms."

Tr. Vol. II at 13-20. The trial court made similar comments later in the hearing as well. *See id.* at 26, 32-35. And the court expressed frustration with Michael. *E.g.*, *id.* at 14.

[12] Following the hearing, the court issued the June 2016 Order. In that order, the court denied Chris's motion for relief under Trial Rule 60, his motion to stay the proceedings supplemental, and his motion for a continuance. The court then rescheduled the hearing on the merits of the proceedings supplemental

request and the show-cause hearing, and the court issued a writ of body attachment to compel Chris's presence at the rescheduled hearing. Thereafter, the trial judge removed himself from the case and reassigned the case to the Tippecanoe Circuit Court without objection from the parties. This appeal ensued.

## Discussion and Decision

### Issue One: The Denial of the T.R. 60 Motion

[13] The threshold issue Chris raises on appeal is whether the trial court abused its discretion when it denied Chris's motion for relief from the Dismissal Order, including that order's award of more than $17,000 in fees and costs, under Indiana Trial Rule 60(B). We review the trial court's decision on a Rule 60(B) motion for an abuse of discretion. *State v. Collier*, 61 N.E.3d 265, 268 (Ind. 2016). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* (quotation marks omitted). A trial court also abuses its discretion if it misinterprets the law. *DePuy Orthopaedics, Inc. v. Brown*, 29 N.E.3d 729, 732 (Ind. 2015).

[14] According to Chris, the trial court's denial of his January 2015 Motion to Stay "had a domino effect on the remainder of the proceedings" and, "[f]aced with the dilemma of failing to appear at the trial or risking prosecution under military law . . . , [Chris] had to dismiss the case." Appellant's Br. at 21. However, Chris continues, "[r]ather than simply dismissing the case . . . the

trial court also entered an order requiring him to pay" the fees and costs associated with the Florida deposition. *Id.*

[15]     According to the Act:

> (1) Authority for stay
>
>> At any stage before final judgment in a civil action or proceeding in which a servicemember . . . is a party, the court . . . shall, upon application by the servicemember, stay the action for a period of not less than 90 days, if the conditions in paragraph (2) are met.
>
> (2) Conditions for stay
>
>> An application for a stay under paragraph (1) shall include the following:
>>
>> (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.
>>
>> (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

50 U.S.C. § 3932(b). The Act further provides:

> If a servicemember, in the opinion of the court, is materially affected by reason of military service in complying with a court judgment or order, the court may on its own motion and shall on application by the servicemember—
>
> > (1) stay the execution of any judgment or order entered against the servicemember; and
> >
> > (2) vacate or stay an attachment or garnishment of property, money, or debts in the possession of the servicemember or a third party, whether before or after judgment.

50 U.S.C. § 3934(a).

[16] There is no question that Chris provided documentation with his January 2015 Motion to Stay that would have satisfied the requirements of Section 3932. *See* Appellant's App. Vol. II at 46-48. As such, Chris emphasizes that the Act provides that, in such circumstances, the trial court "shall" stay the proceedings, 50 U.S.C. § 3932(b), and, therefore, that the trial court here erred when it did not do so. That error, according to Chris, compelled him to file his motion to dismiss and likewise entitles him to relief from the court's judgment on that motion. Specifically, Chris avers that the court's purported error under the Act in denying the January 2015 Motion to Stay entitles him to relief from the Dismissal Order under Indiana Trial Rule 60(B)(1) as "excusable neglect"

and under 60(B)(8) for "any reason justifying relief from the operation of the judgment." Ind. Trial Rule 60(B)(1), (8).[2]

[17]    However, we agree with Michael and William that Chris's use of Trial Rule 60(B) here was improper. This court has consistently stated that Trial Rule 60(B) cannot be used as a substitute for a direct appeal or to revive an expired attempt to appeal.[3] *See Ind. Ins. Co. v. Ins. Co. of N. Am.*, 734 N.E.2d 276, 279 (Ind. Ct. App. 2000), *trans. denied*; *Cullison v. Medley*, 619 N.E.2d 937, 945 (Ind. Ct. App. 1993), *trans. denied*. As Dean Harvey has made clear:

> The general rule is that one must appeal a judgment within the time allowed and not sit idly by, letting the time to appeal expire, and thereafter filing a Rule 60(B) motion in an attempt to revive his remedy of appeal . . . . Relief is only properly provided under Rule 60(B) after a failure to perfect an appeal when there is some *additional fact* present justifying extraordinary relief which allows a trial court to invoke its equitable powers to do justice. The additional factors available for providing relief are those found in subsections (1) through (8) . . . .

William F. Harvey, 4 Ind. Prac. 222 (3d ed. 2003) (emphasis in original). In other words, Rule 60(B) does not provide for an end-run around the usual appellate process. *See, e.g.*, *Vazquez v. Dulios*, 505 N.E.2d 152, 154 (Ind. Ct. App. 1987).

---

[2] Chris further notes that his motion for relief was timely under Rule 60(B) as it was filed less than one year after the Dismissal Order. And Chris contends that he has alleged a meritorious claim, namely, that Michael had exerted undue influence on William and that William was not a competent trustee.

[3] We note that Chris's attorneys in the instant appeal were not his attorneys at the time of, or within thirty days of, the Dismissal Order.

[18] Here, the additional fact that Chris relied on in support of his motion under Rule 60(B)—the trial court's purportedly erroneous denial of his January 2015 Motion to Stay—was well known to Chris before, during, and within thirty days after the entry of the Dismissal Order.[4] As such, if he had an issue with the Dismissal Order, in part or in whole, he could have and should have filed a direct appeal. He did not. Thus, Rule 60(B) was not a procedural path available to Chris on this record. The trial court did not err when it denied his motion for relief under Rule 60(B).

### Issue Two: Denial of June 2016 Motion to Stay & Issuance of a Writ of Body Attachment

[19] Chris also asserts that the trial court erred under the Act when it denied his June 2016 Motion to Stay, which Chris had filed contemporaneously with his motion for relief from judgment, and when the court issued a writ of body attachment with the June 2016 Order. But we decline to reach those issues. Chris's premise for invoking appellate review over those issues is the trial court's denial of his improper Rule 60(B) motion for relief from judgment. As such, to consider the additional issues Chris raises on appeal "would be equivalent to allowing the . . . T.R. 60(B) motion, which was not properly before the trial court . . . ." *Id.* Again, Rule 60(B) "may not be used" to secure

---

[4] We acknowledge Michael and Williams's additional argument that Chris's original motion to dismiss was based on multiple grounds, only one of which was the trial court's denial of the January 2015 Motion to Stay. Under our abuse of discretion standard of review, it is clear that the trial court could have just as readily denied the motion for relief from judgment and affirmed the Dismissal Order on one of Chris's other grounds in his motion to dismiss, such as his assertion that his petition had caused a hardship on his family that he had since sought to avoid.

appellate jurisdiction that has otherwise been forfeited. *See, e.g.*, *id.* We dismiss these additional issues raised by Chris. *Id.*

### *Issue Three: The Trial Court's Comments*

Finally, we acknowledge that Chris separately argues on appeal that the nature and the extent of the trial court's remarks, at two hearings more than one year apart, were out of bounds.[5] However, the Chronological Case Summary unmistakably demonstrates that the trial judge has removed himself from this case going forward, and none of the parties have objected. Thus, insofar as Chris seeks an order from this court to remove the trial judge from further proceedings, such relief is no longer available.[6] Accordingly, we decline to consider this issue. In sum, we affirm the trial court's judgment.

Affirmed.

Bailey, J., and May, J., concur.

---

[5] While we do not approve of the trial court's remarks, we also note that it was clear that the court was frustrated with the parties. Namely, as explained above, the court was frustrated by the manner in which the parties had conducted themselves, which the court described as "gamesmanship." Tr. Vol. I at 7-8.

[6] Insofar as Chris's argument here is that the Dismissal Order should be vacated in light of the trial court's comments, that issue was available to Chris for direct appeal, and we do not consider it now.